**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

MICHAEL JOHNSON,

    Plaintiff,

vs.

TOGO D. WEST, JR., et al.,

    Defendant.

CV-99-N-2068-S

**ENTERED**
NOV 1 6 2000

**MEMORANDUM OF OPINION**

## I. Introduction.

This case is before the court on defendant's Motion to Dismiss, or in the alternative for Summary Judgment (Doc. No. 17). The motion has been fully briefed and is ripe for decision. Upon due consideration, the defendant's motion will be **DENIED IN PART** and **GRANTED IN PART**.

## II. Statement of Facts.[1]

Michael Johnson ("Johnson") is a black male, who was 44 years of age at the time of the incidents alleged in this lawsuit, employed by the Department of Veterans Affairs Medical Center in Birmingham, Alabama (BVAMC). Johnson worked in the pharmacy at BVAMC and he desired to attain the position of clinical pharmacist. A memorandum, dated December 18, 1999, announced a clinical pharmacist position vacancy. The vacancy was

---

[1] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994).



only advertised within the BVAMC; it was not announced in a formal way outside the BVAMC. The memorandum stated only that persons desiring the position should "submit a memorandum to me by the close of business December 31, 1997." The memorandum did not instruct applicants to submit a CV or resume in response to the memorandum. Dr. Jonelle Sabbe ("Sabbe"), a white female, and Johnson applied for the position. Johnson, as directed in the memorandum, submitted a memorandum to Lee Gardner stating his interest in the position. He did not provide a CV and/or resume. Sabbe, on the other hand, submitted an application and a CV. Neither Johnson nor Sabbe were interviewed for the position.[2]

According to Johnson, he has extensive experience in clinical pharmacy starting in 1986. He was a nursing home consultant to a long-term care facility where he reviewed the therapy and the medical wellness of 12,000 patients per month, interacting with the Director of Nursing, medical staff, and physicians on the appropriate therapies for the patients, monitoring follow-up, and abiding by the various guidelines which direct patient care at those institutions. He also was a consultant to the Alabama Department of Mental Health and Mental Retardation where he was responsible for about 200 severely mentally handicapped individuals. There, he interacted with the Medical Director and the Director of Nursing and was responsible for therapeutic drug monitoring, making recommendations, ordering laboratory tests, and attending rounds to provide input on the appropriate therapy. In 1996, Johnson was credentialed as a clinical pharmacist in the United States Navy. None of this information was in his record. There was information in his record, though, that

---

[2] Although plaintiff claims that Sabbe was interviewed for the position, the record is clear that she was not.

should not have been there. A "reprimand and admonishment" report should have been removed from his record and should not have been considered by the Board. Johnson's record does state, however, that he has 12 years experience, although he received his Pharm. D. at a later time than Sabbe.

Sabbe served as a clinical pharmacy specialist for three years while teaching at the Samford University School of Pharmacy. In addition, her resume lists a number of honors and one publication. Sabbe has 3 years experience.

On January 8, 1998, a Board convened to make the selection for the clinical pharmacy position in question. The Board was composed of Dr. Patricia Wright ("Wright"), a black woman, Charles Bowers ("Bowers"), a white male, and Sloan Harper ("Harper"), a white male, who serves as the Chief of Pharmacy Services. The board did not request a resume, CV, or any other additional information from Johnson, although the Board reviewed Sabbe's CV and application and considered the information contained in the CV and application in making its decision. At the time the Board met, there were two clinical pharmacist positions open, but the Board was to select only one person for the position. The Board selected Sabbe for the position.

In depositions taken during discovery in this lawsuit, Dr. Bowers stated he would have recommended Johnson if there were two vacancies available to fill. Dr. Wright stated she may have recommended Johnson for the position of Clinical Pharmacist if she had known of his work experience, specifically being certified by the Navy as a clinical pharmacist.

Within thirty days after the Board met and selected Sabbe, the Board received an application and CV and/or resume from Carol Howard ("Howard"), a white woman, and another Board meeting was held. At that meeting, Howard was selected for the second available clinical pharmacist position.[3] Howard submitted her application with accompanying CV and/or resume after the first Board met. The second Board considered Howard's application based on the same memorandum for which the first Board based its selection.

The plaintiff filed a formal EEO complaint on May 18, 1998. In the complaint, the plaintiff alleged discrimination in employment based on race, age, and reprisal. As of the time the motion was filed with the court, the plaintiff had not filed a claim within the administrative process as to the alleged torts of intentional infliction of emotional distress and assault and battery. Plaintiff also did not allege sex discrimination in his EEO complaint.

## III. Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings,

---

[3] The plaintiff did not allege in his EEO complaint that he suffered from discrimination based on the selection of Howard to the second clinical pharmacist position.

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law

will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11 (1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The

nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV. Discussion

### A. Title VII Sex Discrimination

"A federal employee must pursue and exhaust her administrative remedies as a jurisdictional prerequisite to filing a Title VII action." *Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999). Plaintiff did not claim that he was a victim of discrimination based on gender in his "Complaint of Employment Discrimination" to the Department of Veterans Affairs, and therefore plaintiff is estopped from pursuing that claim in this case. Summary judgment on this count will be **GRANTED**.

### B. Intentional Infliction of Emotional Distress and Assault and Battery

"In order to maintain a lawsuit against the United States under the Federal Tort Claims Act, a plaintiff must present notice of his or her claim to the appropriate federal agency. *Adams v. United States*, 615 F.2d 284 (5th Cir. 1980), clarified on reh'g, 622 F.2d 197 (5th Cir. 1980) (quoting *Mack v. Alexander*, 575 F.2d 488 (5th Cir. 1978)). Once the claim has been denied or six months after the claim has been filed, a plaintiff may bring a lawsuit in federal court. 28 U.S.C. § 2675(a)." *Free v. United States*, 885 F.2d 840, 842 (11th Cir. 1989). The plaintiff failed to provide notice of the alleged intentional infliction of emotional distress or assault and battery claims to the Department of Veterans Affairs, and therefore plaintiff is estopped from making such claims in this case. Summary judgment on these counts will be **GRANTED**.

C.  **Title VII Race Discrimination**

The prima facie case, in situations when there was an alleged failure to promote due to discrimination, was clarified by the Eleventh Circuit in *Walker v. Mortham*, 158 F.3d 1177 (11th Cir. 1998):

> [P]laintiffs may establish a prima facie violation by showing that they are members of a group protected by title VII, that they sought and were qualified for positions that [the defendant employer] was attempting to fill, that despite their qualifications they were rejected, and that after their rejection [defendant employer] *either* continued to attempt to fill the position *or* in fact filled the positions with [persons outside the plaintiff's protected class].

*Id*. at 1186. In addition, "we may *never* require a plaintiff to establish that she is more qualified than the successful promotee, let alone impose that requirement at the prima facie stage." *Id.*

In the instant case, the plaintiff has met his burden to demonstrate a *prima facie* case of race discrimination. He is a black man who applied for the position of clinical pharmacist. He was credentialed as a clinical pharmacist in the Navy and has 12 years experience. Plaintiff was rejected for the position, and in fact the BVAMC filled the position with a white female, Sabbe.[4]

As plaintiff has met its burden, the defendant must now come forward and articulate one or more legitimate non-discriminatory reasons for its decision to promote the white applicant instead of the plaintiff. The defendant states that it promoted Sabbe instead of

---

[4] In plaintiff's "Complaint of Employment Discrimination" to the Department of Veterans Affairs, plaintiff only alleged a failure to promote on 1-9-98. Dr. Sabbe was promoted at that time. Plaintiff does not allege that the VA also failed to promote him within the next month when Carol Howard was selected for another clinical pharmacist vacancy. Therefore, the failure to promote plaintiff to the position given to Carol Howard will not be considered by the court, although the facts surrounding the promotion of Howard are relevant to plaintiff's race discrimination claim.

Johnson because Sabbe was the more qualified candidate. This is an adequate nondiscriminatory reason for the decision. Next,

> [i]f the defendant articulates one or more such reasons, the presumption of discrimination is eliminated and "the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision."

*Chapman v. AI Transport*, Nos. 97-8838, 97-9086, 97-9269, 2000 U.S. App. LEXIS 24788, at *27 (11th Cir. Oct. 2, 2000). Further, the Eleventh Circuit recently wrote that

> [i]n a failure to promote case, a plaintiff cannot prove pretext by simply showing that [the plaintiff] was better qualified than the individual who received the position that [the plaintiff] wanted. A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by [the unlawful motivators of sex, race, etc. citation omitted] We have explained that "a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where . . . the reason is one that might motivate a reasonable employer." [citations omitted]
>
> Nevertheless, evidence showing an employer hired a less qualified applicant over the plaintiff may be probative of whether the employer's proffered reason for not promoting the plaintiff was pretextual.

*Lee v. GTE Florida, Inc.*, No. 98-3380, 2000 U.S. App. LEXIS 23190, at *7-9 (11th Cir. Sept. 13, 2000).

The plaintiff has provided the court with evidence sufficient to create genuine issue of fact and that would allow a reasonable fact finder to conclude that the reasons provided by the defendant are not the true reasons for the employment decision. First, a reasonable fact finder could determine that plaintiff was better qualified than Sabbe. Plaintiff has 12

years experience and Sabbe has 3 years experience. As discussed above, according to the plaintiff, he has an extensive background in clinical pharmacy.

Second, a reasonable fact finder could determine that the plaintiff was treated unfairly by the Board. He was not requested to supplement his memorandum to the Board with a resume, although the Board considered Sabbe's resume. Two of the Board members stated that they relied heavily on the CV information in selecting Sabbe. Two of the Board members stated they may have selected plaintiff if they had known about his experience and background. Further, a proposed reprimand was left in his file and considered by the Board, although it should have been removed from his file so that the Board would not have considered it. Finally, the selection of a second clinical pharmacist so close in time to the first Board and in an unusual way evidences the unfairness directed toward the plaintiff. Although the first Board was tasked only with selecting one applicant, there were two positions open at the time, and another Board was held within approximately 30 days of the first board. No new solicitation for applicants was published. The second Board considered an application submitted after the first Board, yet the Board selected this recent applicant, Howard. She also had submitted a CV that was considered in her selection. BVAMC Director Y.C. Parris could not explain why the second Board was held without a second announcement and so close to the first Board.

Third, a reasonable fact finder could determine that racial discrimination played a role in the unfairness involved in the selection of Sabbe to the position of clinical pharmacist. Plaintiff alleges Harper, his boss and member of the selection Board, dislikes black people and does not treat then fairly. Plaintiff cites numerous situations in which he

believes Harper's distaste for black people was evident. As Harper was one of the three Board members and there is a strong question as to why the Board acted as it did, a reasonable fact finder could determine that Harper's alleged dislike of black people played a part in the actions of the Board.

Summary judgment on this count will be **DENIED**.

### D.     Age Discrimination

As evidence of this claim, plaintiff cites a report which shows that over the last two years of Harper's tenure as Chief of Pharmacy, six out of the seven available clinical pharmacist positions have been filled by persons under the age of 40. Moreover, two younger women were hired for the position sought by plaintiff.

This evidence is too weak to support a case of age discrimination by the plaintiff. Plaintiff provides no information to the court regarding the relevant populations from which clinical pharmacists are drawn, etc. If the universe of persons comprising the pool of available and qualified applicants were disproportionately young, it would be normal for most of the persons hired to be young, and, as has been demonstrated in the evidence, the vast majority of the available population of applicants for the positions were under age 40. The defendant's motion for summary judgment will be **GRANTED** on this claim.

### E.     Title VII Retaliation

The plaintiff asserts that he was suspended without pay because he filed his own EEO complaint and participated in a co-worker's EEO complaint. The plaintiff's only evidence on this claim addressing the alleged retaliation is his refusal to give a statement regarding a co-worker's EEO investigation; there is no mention of retaliation for filing

plaintiff's own complaint in plaintiff's submission to the court. Therefore, the court will consider only plaintiff's claim of retaliation in response to plaintiff not providing a written statement for the co-worker's EEO investigation.

"In order to establish a prima facie case of retaliation under Title VII, a plaintiff must prove the following elements: (1) [plaintiff] participated in an activity protected by Title VII; (2) [plaintiff] suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision." *Gupta v. Florida Bd. of Regents*, 212 F.3d 57, 587 (11th Cir. 2000).

According to plaintiff, he was asked by defendant's counsel Mike Sanderson to provide a statement regarding a co-worker's EEO claim. After he refused, Harper requested plaintiff come and speak to Harper about why he would not provide the statement. Again, according to plaintiff, he was threatened with disciplinary action and suspension if he did not cooperate. Plaintiff claims, somewhat cryptically, that plaintiff was approved and then disapproved for "union time," and that because of his refusal to provide the statement and the "union time" request, he received a five-day suspension.[5]

Plaintiff does not present to the court any protected activity for which a prima facie case of retaliation could be made. The alleged protected activity is that plaintiff refused to provide a statement in a co-worker's EEO investigation. Under Title VII, "[i]t shall be an

---

[5]Plaintiff's brief states that "[s]hortly thereafter [plaintiff's refusal to provide a statement] Plaintiff requested official union time and was approved and then it was disapproved and he received a five (5) day suspension without pay due to the disapproval of the union time and not cooperating with Defendant in the EEO Investigation regarding a co-worker." The evidence cited in support of the brief is plaintiff's deposition which states that "as a result of [failing to provide a statement] and as a result of being denied having a Union – official time for the Union approved on a particular day, then when I'm to go to do Union business, it's disapproved. You see what I'm saying? So, based on those two issues, I'm given a five-day suspension without pay."

unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this title . . . , or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3 (2000). If plaintiff had suffered from retaliation because he *participated* in an EEO investigation, he would have met this prong of the prima facie case. But plaintiff complains he was retaliated against because he *refused* to participate in an EEO investigation, and this is not protected activity. *See Equal Employment Opportunity Commission v. Total System Services, Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000) (discussing protected activity under Title VII and noting that the plaintiff must have *participated in* a protected activity involving an EEO investigation). Summary judgment on this count will be **GRANTED**.

An appropriate judgment will be entered with this memorandum of opinion.

Done, this **16**th of November, 2000.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE